IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BILLY RANCY OLDHAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV03-369-E-LMB |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| SGT. DAVID SKLAR, SGT. | ) | |
| PICKETTE, LT. B. COVERT, | ) | |
| DEPUTY RAPP, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court is Defendants' second Motion for Summary Judgment (Docket No. 57). Plaintiff has filed a Response (Docket No. 65). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.

**MEMORANDUM DECISION AND ORDER - 1**

I.

## MOTION FOR SUMMARY JUDGMENT

A.  **History and Claims**

On February 18 or 19, 2003, Plaintiff was arrested for grand theft and placed in the Bonneville County Jail. *See Affidavit of Brian Covert*, ¶ 3 (Docket No. 38). Upon admission, Plaintiff stated he was a bail enforcement agent and that he may have enemies at the jail. *See Affidavit of Tracy Cox*, ¶ 2 (Docket No. 59-1). At that time, he also told officers that, during his last incarceration at the jail in 2002, he had been hit in the nose by another inmate. *See id.,* Exhibits, p. 8. During the 2002 incarceration, Plaintiff had asked to be placed in protective custody due to his bail enforcement agent background. Plaintiff was in fact placed in protective custody at that time, but had an altercation with Scott Martin, another inmate in protective custody, who apparently hit him in the nose. Plaintiff alleges that the altercation was due to his status as a bail enforcement agent. *See id.,* Exhibits, p. 7. Deputy Covert, who is a named Defendant in this action, was also involved in Plaintiff's 2002 incarceration and wrote a memo about the 2002 incident with inmate Martin and Plaintiff's requests for protection. Covert indicated that, in 2002, Plaintiff had been belligerent and verbally abusive with staff and should be placed in "MAX" if he returned to jail. *See id*.

Plaintiff alleges that Scott Martin was incarcerated at the jail in 2003 when Plaintiff was arrested and placed in jail. Plaintiff alleges that he had previously arrested Scott Martin as part of Plaintiff's employment as a part-time bounty hunter. The officials

**MEMORANDUM DECISION AND ORDER - 2**

at the Bonneville County Jail knew of Plaintiff's history, and that Plaintiff believed his bounty hunter status placed him at risk of harm. Accordingly, Plaintiff was placed in protective custody which has many restrictions on an inmate's property and actions.

Plaintiff was subsequently assessed for placement in the general population. Sergeant Tracy Cox declares that, "[i]n reviewing the matter, it was our determination that no current jail inmate had been brought in by Plaintiff." *Affidavit of Tracy Cox*, at ¶2 (Docket No. 59-1). Plaintiff has presented no competent evidence to the Court disputing the allegation that (1) jail personnel researched whether any inmates had been arrested or brought in by Plaintiff; or that (2) none of the inmates in the general population had been arrested or brought in by Plaintiff.

Sergeant Cox states, and the jail records show, that Plaintiff asked to be moved from protective custody to general population on or about March 1, 2003. Plaintiff disputes that he asked to be moved to general population at that time. The Court construes this issue in a light most favorable to Plaintiff, and for purposes of the pending motion concludes that he did not ask to be moved on that date.

Plaintiff was moved to general population on March 1, 2003, but acknowledges that he was placed back in segregation on March 3, 2003. Plaintiff does not dispute the content of the jail record provided by Defendants showing that Plaintiff was moved from general population back into segregation "due to continuous passing notes." *Exhibits to Affidavit of Tracy Cox*, Exhibit 1 (Docket No. 59-2).

**MEMORANDUM DECISION AND ORDER - 3**

Plaintiff returned to general population on or about March 14, 2003. He remained in general population for more than one month without incident until April 19, 2003, when he was involved in an altercation with inmate Barnes.[1]

**B.      Standard of Law**

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences that can be drawn from the evidence must

---

[1] Plaintiff previously alleged that the altercation took place the very day he was moved – March 14, 2003, but the jail records show that the assault took place on April 19, 2003. *See Defendants' Memorandum*, at p. 1 n.1 (Docket No. 58).

**MEMORANDUM DECISION AND ORDER - 4**

be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31.

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 377 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

The United States Supreme Court has determined that "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  The Supreme Court has clarified that "[i]t is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Id*. at 834.

To state a claim under the Eighth Amendment, Plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id*. at 834.  Plaintiff must also show that Defendants were deliberately indifferent to the substantial risk of serious harm.  Deliberate  indifference exists when an official knows of and disregards a condition posing a substantial risk of serious harm or when the official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws the inference.  *Id*. at 837.  In other words, "deliberate

**MEMORANDUM DECISION AND ORDER  - 5**

indifference" requires a showing that the official was "subjectively aware of the risk." *Id*. at 829. Mere indifference or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980).

**C.     Discussion**

According to the evidence in the record, it is undisputed that Defendants performed a check of inmates to determine whether Plaintiff had been the bounty hunter for any of the current inmates before they moved him from protective custody. It is also undisputed that jail staff correctly determined that no current jail inmate had been brought in by Plaintiff. *Affidavit of Tracy Cox*, at ¶ 2 (Docket No. 59). Because Plaintiff was passing notes to other inmates, he was moved back to segregation within two days after he was moved into general population. He remained in the general population for several weeks, but did not ask to remain there. Plaintiff was eventually moved back into the general population and remained there for nearly 30 days without any problems with other inmates. Plaintiff did not seek a return to protective custody during the month that he was housed without incident in the general population, nor did he report that anyone was bothering or threatening him. Further, there is no evidence that any of the named Defendants observed, or received information from any other source, that anyone was bothering or threatening Plaintiff.

Plaintiff asserts that Defendants should have done more because Plaintiff arrested Inmate Scott Martin, and Scott Martin was still at the jail when Plaintiff was arrested on

**MEMORANDUM DECISION AND ORDER - 6**

February 18 or 19, 2003. Plaintiff asserts that it was common knowledge to inmates throughout the jail that he was involved in bail enforcement because of his incarceration with Scott Martin. Plaintiff has come forward with no evidence supporting his assertion that his part-time bail enforcement job was "common knowledge" among inmates.

It is Plaintiff's burden to show that Defendants recklessly disregarded a substantial risk of harm by placing him in general population. The evidence in the record demonstrates that Defendants did not "disregard" a risk. Rather, they assessed the risk and determined that it would be appropriate to move Plaintiff into the general population. The record establishes that protective custody had many restrictions on an inmate and, therefore, it was to an inmate's advantage to live in general population so long as no substantial risk of harm existed. Plaintiff has submitted no evidence showing that during his one-month period of time residing in general population before his altercation, he had a risk of harm, or that Defendants noted any signs of a risk of harm.

In other failure-to-protect cases, courts have determined that defendants who took reasonable actions to assess the risk of an inmate's housing assignment before placing the inmate there did not act with deliberate indifference. *See Boyce v. Moore*, 314 F.3d 884, 890 (7th Cir. 2002) (inmate failed to carry his burden of showing deliberate indifference in a failure to protect case where defendant transferred the inmate to a different tier with a different inmate population instead of to protective custody, apparently believing that the new tier would be more secure). In Plaintiff's case here, as in *Verdecia v. Adams*, 327 F.3d 1171 (10th Cir. 2003), "[e]ven if the conclusion [the official] drew from his

**MEMORANDUM DECISION AND ORDER - 7**

investigation was erroneous or negligent, it does not rise to the level of an Eighth Amendment violation based on deliberate indifference." *Id*. at 1175.

Based on all of the foregoing, the Court concludes that Plaintiff has failed to come forward with evidence showing that these Defendants exhibited subjective deliberate indifference in placing him in the general population on March 1, 2003, and again on March 14, 2003. Defendants are entitled to summary judgment on this claim.

## II.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 57) is GRANTED, and all of Plaintiff's claims that Defendants failed to protect him from a substantial risk of serious harm from other inmates are dismissed with prejudice, including those addressed in the Court's Order of May 27, 2005.

Plaintiff has chosen not to file an amended complaint to assert his claims of excessive force in this action, and therefore, those claims are also dismissed without prejudice.

DATED: **March 7, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER  - 8**